W. S. PEKOVICH and Admiralty Alaska Gold Mining Company, a Corporation, Appellants,

v.

Minnie COUGHLIN, as Executrix of the Estate of Robert E. Coughlin, Deceased, Appellee.

No. 15683.

United States Court of Appeals Ninth Circuit.

July 9, 1958.

Rehearing Denied Sept. 12, 1958.

Joseph A. McLean, Juneau, Alaska, Fred J. Wettrick, Seattle, Wash., for appellants.

Faulkner, Banfield & Boochever, Juneau, Alaska, for appellee.

Before BONE, BARNES and HAMLEY, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a decree of the lower court ordering individual appellant Pekovich to transfer and deliver to appellee, Executrix of the Estate and widow of Robert E. Coughlin, four thousand shares of common stock of appellant Admiralty Alaska Gold Mining Co., an Alaska Corporation (herein Corporation) and awarding to appellee her costs and disbursements herein, including an attorney's fee of $450.00.

The court below found as a fact that there was insufficient evidence (indeed there was none) to show that appellant Corporation authorized or ratified the later noted and so-called "agreement"

between appellant Pekovich and appellee's decedent, hereafter Coughlin. As indicated above, the decree ran against Pekovich alone.

From the pleadings and undisputed testimony, it would appear that on February 1, 1954, the then Secretary-Treasurer of Corporation tendered his resignation to its Board of Directors, asserting that the salary was not sufficient for the amount of work entailed by the position. His resignation was accepted and on the same date Coughlin was selected to take over the duties of this office, pursuant to a suggestion made by Pekovich.

On February 5, 1954, Pekovich delivered to Coughlin a letter in his own handwriting which read as follows:

"This will confirm my understanding with you that if you take care of the bookkeeping and other necessary things in connection with the D.M.E.A. Admiralty Alaska matter I will give you in compensation therefor or cause to be given you 4,000 (four thousand) shares of the Admiralty Alaska Gold Mining Co. stock."

Appellant and appellee are in general agreement that the "understanding" referred to in the Pekovich letter was a "contract" or "agreement" entered into between Coughlin and Pekovich.

Coughlin began to perform the duties of Secretary-Treasurer of Corporation in February of 1954 and continued to so act until his death on September 22, 1955. At the time he and Pekovich made this "agreement" (February, 1954) the financial position of Corporation was such that it did not have sufficient cash to pay the customary salary of $75.00 per month to the new Secretary-Treasurer. However, in May of that same year, its cash position improved, and Coughlin, at that time drew as a salary for himself an amount equal to $75.00 per month for each of the months he had held the position of Secretary-Treasurer. He thereafter continued to draw a salary of $75.00 per month for the remainder of his term in office. The block of corporate stock mentioned in

the above noted Pekovich letter was never delivered to or demanded by Coughlin, nor did Pekovich ever tell Coughlin or any one else that he (Pekovich) would not deliver the stock.

It is appellee's contention (and was apparently the view of the court below) that the "understanding" claimed to be evidenced by the Pekovich letter of February 5, 1954, was in fact a "contract" which obligated appellant Pekovich to deliver over to Coughlin the block of 4000 shares of stock of Corporation *in addition to the salary of $75.00 per month which Coughlin was to receive from Corporation;* that the said stock was to be given to Coughlin as an *added inducement* to him to accept the position and perform the duties of the office to which he had been appointed *at the suggestion of Pekovich.*

Appellant here urges, as he contended below, that the promised corporate stock was to be the *full compensation to Coughlin* for the work of Secretary-Treasurer; that it was a method of compensating Coughlin commensurate with the then financial condition of the Corporation. He also contends here that when Coughlin began drawing a cash salary for himself he thereby "elected" to accept this cash salary from Corporation *in lieu* of taking and/or accepting the 4,000 shares of stock from Pekovich as *his full compensation for services.*

In support of this position, Pekovich presented in evidence testimony showing that the customary salary for the job, both before and after Coughlin's term, was $75.00 per month; that during Coughlin's term Corporation provided office space and clerical help which services had not previously been provided under the "policy" of Corporation. The only substantial evidence in support of the Pekovich *interpretation of the agreement* with Coughlin is to be found in the testimony of Pekovich in which he undertook to explain what this "agreement" really meant to the contracting parties.

Arrayed against this interpretation are statements of a number of witnesses who testified to conversations had with

the deceased Coughlin which would indicate that Coughlin *believed* the Pekovich letter was given to evidence the existence of a previous agreement under which Pekovich would deliver to him the shares of stock *as an added incentive* to take on the duties of Corporation Secretary-Treasurer.[1] Supplementing this evidence are certain items brought out during the testimony of appellant's witnesses tending to show that Pekovich had never indicated in any way to Coughlin that the "understanding" and/or "agreement" between the men mentioned in the letter quoted above was terminated by Coughlin when he started drawing a salary.

The evidence also revealed that Pekovich was not only the principal stockholder in Corporation but was also its General Manager, a relationship that gave him a vital stake in its welfare. It seems clear that the trial judge was persuaded that Pekovich was familiar with the general course of corporate business affairs, including Coughlin's exact relations to the Corporation at and during the time and times here pertinent.

Further, it was indicated in the evidence that though the work in the position of Secretary-Treasurer has increased substantially from the standpoint of accounting since the demise of Coughlin, that from the standpoint of necessary correspondence the position has had a great decrease in the amount of time necessary to properly fulfill the duties *since* the time that Coughlin was occupying that office.

The problem before this Court is one of interpretation and construction of the terms of a contract, and as such is a question of law to be determined by the court. Republic Pictures Corp. v. Rogers 9 Cir., 213 F.2d 662, 665. The letter of February 5, 1954 is ambiguous on its face. It is equally susceptible to the interpretation placed upon it by either appellant or appellee. The trial judge was faced with the duty of determining just what "understanding" had been reached between Pekovich and Coughlin sometime shortly before February 5, 1954, since both parties were relying on the letter bearing that date as evidence of some sort of binding agreement. It is obvious that the judge had to construe the meaning of this vague letter by recourse to the facts developed in the evidence.[2]

The trial court seems to have reached the conclusion that Pekovich's acts prior to Coughlin's death indicated that he (Pekovich) placed the same meaning on the "understanding" as had Coughlin, and the evidence was sufficient to support that view. This being the case, the "understanding," i.e., the contract between Pekovich and Coughlin is enforcible as interpreted by the parties themselves even though it is ambiguous on its face. Restatement of Contracts § 235(e); Williston on Contracts, Rev.Ed. § 623; Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 178 F.2d 541, 554.

The only evidence which runs counter to such a construction is the testimony of Pekovich himself. It is hornbook law that the weight to be given the testimony of witnesses must be determined by the trial judge. He had the opportunity to view the demeanor of the witnesses in this case, and obviously he did not believe Pekovich when he testified that his "understanding" was that the stock he was to give Coughlin was to *be full compensation* for Coughlin and to be *in lieu of any cash salary.*

The obscurities in this record afford no sound reason for disagreeing with the conclusion reached by the trial

---

1. This testimony was admitted in evidence under the so-called deadman's statute of Alaska which specifically allows such testimony where one of the parties to an action by or against an executor appears in his own behalf. Alaska Compiled Laws Annotated § 58-6-1, 1949.

2. Appellant was restrained in his appraisal of the litigation when in his brief he advises us that "this case presents a peculiar situation." The trial judge stated that "the matter of this whole thing here was handled in a careless, slipshod manner."

judge as to just what "understanding" was reached between Pekovich and Coughlin as to the compensation for Coughlin's services. We conclude that the findings of fact and conclusions of law of the trial court as to the construction of the contract in controversy find support in the evidence.

The decree awards $450.00 to appellee as an attorney's fee. Award of this sum is not supported in view of the court's conclusion of law that $340.00 is a reasonable attorney's fee. The decree appealed from is therefore modified to allow an attorney's fee of $340.00. As so modified, the decree is affirmed.