The **GEORGE HYMAN CONSTRUCTION COMPANY**

v.

The **UNITED STATES.**

No. 87–65.

United States Court of Claims.

Oct. 14, 1966.

---

———————◆———————

Alexander M. Heron, Washington, D. C., attorney of record, for plaintiff. John A. Whitney, Washington, D. C., of counsel.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COLLINS, Judge.

This is a contract suit which is before the court on cross-motions for summary judgment. Plaintiff, The George Hyman Construction Company (hereinafter "the contractor"), appeals from an adverse decision of the Board of Contract Appeals of the General Services Administration (hereinafter the "Board") denying its claim for an equitable adjustment. The gravamen of the complaint is the defendant's refusal to permit the use of any type of granite other than that specified in plaintiff's contract. This refusal is alleged to be a breach of contract. The controversy arises from the following facts:

In 1961, plaintiff, as successful bidder, was awarded a contract covering the construction of alterations and additions to an east wing of the Smithsonian Institution's Museum of Natural History in Washington, D. C. The existing building was comprised of three distinct types of granite. Granite designated as Milford Pink had been used in the lower courses of the structure, Bethel White granite had been used from the end of the lower courses to the cornices and attic portion, and, above that, a Mount Airy white granite had been used. These three types of granite were also named in the contract specifications. The relevant section provides:

20–5. Kind of Stone.—See notes on drawings for type and locations.

(a) *Granite* indicated on the drawings as type "A" shall be "Milford Pink" as quarried by the H. E. Fletcher Company, West Chelmsford, Mass.

(b) *Granite* indicated on the drawings as type "B" shall be "Bethel White" as quarried by the Barre Building Granite, Inc., Barre, Vermont.

(c) *Granite* indicated on the drawings as type "C" shall be "Mount Airy" as quarried by the North Carolina Granite Corporation, Mount Airy, North Carolina.

(d) *Granite* shall be within the range of color and texture represented by the Governments [*sic*] approved samples. Swirls, bands or veining will not be acceptable. Patching will not be permitted.

In addition, the contract contained a provision relating to the specified granites, which stated:

20–3. Naming of Stone.—The naming of granites is for the purpose of indicating the type that is required, but is not intended to exclude any granite having the characteristics which in the opinion of the Service, are so nearly like those named that they will give practically the same effect.[1]

The contractor read section 20–3 as an authorization to substitute other types of granite in lieu of those specifically mentioned. Accordingly, it submitted for approval New Hampshire Pink for Milford Pink and Chelmsford White for the Bethel White and the Mount Airy White. These proposed substitutions were rejected by both the architect and the contracting officer. A second substitution was offered which again met rejection on the ground that the proposed substitutes did not have the same

---

1. The term "Service" refers to the Public Buildings Service of the General Services Administration. In addition to the Service's approval, defendant had also employed an architect who was authorized to reject or recommend approval of the granite samples that might be submitted.

characteristics as the named granites and would not give practically the same effect. Thereafter, the contractor, having exhausted the reasonable substitutes, used the granites specified in the contract, and, in so doing, incurred the additional costs which he now seeks to recover.

■ The essence of plaintiff's case derives from the argument that section 20–3 of the contract, which granted both the architect and the contracting officer the right to approve satisfactory substitutes, consituted a twofold representation, i. e., first, that satisfactory granite substitutes do exist and secondly, that such substitutes would be approved. Plaintiff's claim proceeds entirely on this ground. There has been no contention made that the Board's decision was arbitrary or capricious in the sense that it rejected the proffered granite substitutes even though their use would have given practically the same effect as the named granites. Indeed, such was not the case for plaintiff concedes that the proposed substitutes did differ from the named stone. Rather, the attack here is limited solely to the Board's interpretation of section 20–3. The issue is therefore a matter of law which the court may freely reexamine, the limitations upon judicial review of administratively determined factual matters having no application. See 41 U.S.C. §§ 321, 322; Jack Stone Co. v. United States, 344 F.2d 370, 170 Ct.Cl. 281 (1965).

■ In the Board's judgment, section 20–3 imposed upon the Government a duty not only to consider, but also to accept, any substitute stone, which, in the opinion of the contracting officer, would give practically the same visual effect as the stones specifically cited in the contract. Moreover, it recognized that the discretionary power thus vested in the contracting officer could not be exercised without appropriate limitation, but rather that the discretion be exercised reasonably and fairly. With this limitation in mind, it concluded that, since the evidence showed that differences did exist between the specified stone and the substitutes offered (a fact with which plaintiff likewise agrees), the contracting officer's rejection of the substitutions was neither unfair nor unreasonable and should therefore be upheld. In reaching this conclusion, the Board specifically rejected plaintiff's claim that section 20–3 of the specifications constituted a representation by the defendant regarding either the existence of acceptable substitutes for the named stones, or, as plaintiff further alleges, a representation that one of these existing substitutes would receive approval. We concur in the Board's rejection of this argument.

Plaintiff bases its "representation" theory on the fact that defendant was aware, at the time the contract specifications were drawn, of the limited number of known granites commercially available. Given this fact, it is argued that, by indicating a willingness to accept a substitute for the named stone, defendant impliedly represented that a known existing granite would be accepted in lieu of that named, which would, at the same time, meet the contract requirement of giving practically the same effect as the specified granite. It is argued that any other view regarding section 20–3 would render it illusory. Thus, from plaintiff's standpoint, the contract granted it the latitude to deviate from the named granite and the right to require defendant to accept the nearest matching substitute. Plaintiff recognizes that in order to sustain this position it must overcome the argument that the contemplated purpose of the "substitution clause" was to permit the approval of a granite comparable to that specified, but which might not have been quarried or otherwise known to defendant at the time the contract was executed.

Plaintiff relies upon this court's decision in Rust Eng'r Co. v. United States, 86 Ct.Cl. 461 (1938), wherein it was stated that a contracting officer's insistence upon the use of a tile, not specified by name in the contract and generally unknown to the trade at the time the contract was made, constituted an arbitrary demand for which an equitable

adjustment would be granted. From this, plaintiff draws the broad conclusion that contract specifications are to be interpreted in light of the general state of knowledge existing at the time the contract is executed. And thus we are asked to accept the proposition that, in the case at bar, substitutes for the specified types of granite were likewise to be drawn from those generally known. But the difference between what a contractor *must* supply and what he *may* supply is to be guided not by a general rule, but rather by a reasonable construction of the contract language. And where, as here, that language permits the use of approved substitutes, in lieu of a named item, then clearly such substitutes, if otherwise qualifying, must be accepted, whether in existence at the time the contract was executed or not. To construe (that is, to limit) the "substitution clause" as requiring the use of known substitutes would be as unreasonable, in this instance, as defendant's demand in *Rust* that a contract specification be met by the use of an unknown product. Indeed, to accept plaintiff's view of the matter would result in placing defendant in the position of having to accept as a substitute a granite which it could as readily have specified by name. This would negate the very purpose for which the clause was written. Accordingly, plaintiff's argument that section 20–3 contemplated the selection of a substitute drawn from known sources must be rejected.

Nor do we read section 20–3 as holding out any promise that defendant would accept anything less than that called for under the contract. By its terms, defendant was obligated to accept either the named granite or a substitute so nearly the same as would give "practically the same effect." Surely there is no ambiguity present here. Moreover, the contract specifically stated that "the naming of granites is for the purpose of indicating the type that is required" and thus it clearly specified the standard by which both the architect and contracting officer would have to be guided in deciding whether substitutes were "so nearly like those named that they will give practically the same effect." Hence, we have neither an undisclosed guideline nor an undisclosed intent. To prevail, it is incumbent upon plaintiff to show that what was offered would have met this requirement of "practically the same effect." This it has not done. As previously noted, plaintiff does not challenge the Board's finding that the contracting officer's rejection of the substitute stones was premised upon noncompliance with specifications. Rather, the challenge has been directed against the meaning of the contract language, and we cannot sustain plaintiff on this ground.

Plaintiff cites McIntyre v. United States, 52 Ct.Cl. 503 (1917), but this does not compel a different result. In that case, the contract specifications called for "approved Colorado marble." The defendant's refusal to approve any Colorado marble required plaintiff to furnish stone from a different state, thereby incurring additional costs. In granting recovery, this court took the position that the contractor acted reasonably in assuming that marble from a Colorado quarry would be approved. In effect, the contract specification constituted a representation that that which was named would be approved. We hold no less here. Plaintiff's difficulty is that it did not submit what was named. It assumed that the right to offer substitutes created a corresponding duty in defendant to accept them, notwithstanding the fact that they did not comply with the specifications. That view cannot be upheld.

For the reasons stated, plaintiff's motion for summary judgment must be denied, and defendant's cross-motion is granted. Plaintiff's petition is dismissed.