**UNITED STATES of America for the Use of WHITE MASONRY, INC.,** Plaintiff-Appellee,

v.

**F. D. RICH COMPANY, Inc.,** Defendant-Appellant,

and

Transamerica Insurance Company, United States Fidelity & Guaranty Company, American Reinsurance Company, General Reinsurance Corporation, Insurance Company of North America, Defendants.

No. 24962.

United States Court of Appeals, Ninth Circuit.

Nov. 19, 1970.

Charles P. Flynn (argued), of Burr, Pease & Kurtz, Anchorage, Alaska, for appellant.

John M. Stern, Jr. (argued), Anchorage, Alaska, for appellee.

Before CHAMBERS, HAMLEY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

F. D. Rich Company, Inc., the prime contractor under an agreement with the United States, appeals from a judgment in favor of the subcontractor, White Masonry, Inc.

Appellant was awarded a general contract for the construction of certain family housing units at Elmendorf Air Force Base in Alaska. Appellee was the masonry subcontractor under the general contract. The action was prosecuted against appellant and its surety under the Miller Act,[1] for the balance claimed due on the subcontract. Appellant counterclaimed for the cost of parging[2] certain basement walls. Appellant claims that the subcontract speaks for itself and that it is entitled to judgment on its counterclaim as a matter of law. Appellee asserts: (1) that the contracts were ambiguous, (2) that the cost of the particular parging was excluded by agreement of the parties, and (3) as an alternative, that a mutual mistake was made between the parties as to whom should do the parging. The district court, after a full trial, accepted the views of the appellee and entered findings and conclusions in support of a judgment in its favor.

## THE CONTRACT

That part of the prime contract between appellant and the United States touching on the subject of masonry provided:

"4–07 Erection: D. Parging of basement walls: The outside of the basement walls in contact with the earth shall be parged with two coats of mortar, each ⅜″ thick."

The drawings of the Corps of Engineers, made a part of the prime contract, in depicting a "typical wall section" on the family housing for the Colonels' quarters indicated "parging & waterproofing" on the basement walls, while the drawings of the Corps on the same type of "typical wall section" for the family housing, 1250 and 1400 square foot units, indicated nothing with respect to parging or waterproofing the basement walls on those buildings. Only the parging on the latter is here in dispute. Appellee concedes that he was required to parge the basement walls on the Colonels' quarters.

Pertinent parts of the subcontract between appellant and appellee are:

(1) "The second party (appellee) shall furnish and place all * * * parging * * * required to complete the work of the hereinbefore mentioned masonry sections of the specifications."

(2) "In so far as the portion of the general contract being performed by second party is concerned, the second party assumes all the obligations of the first party."

(3) "All of the above work[3] shall be performed agreeably to all *the contract drawings* * * *."

(4) "ARTICLE IV. Should it appear that the work hereby intended to be done or the material to be furnished, or any of the matters relative to said work or materials, are not *sufficiently* detailed or explained on the said drawings, * * * second party shall apply to the first party for such other and further drawings or explanations as may be necessary * * *."

## THE EVIDENCE

The testimony of the various witnesses makes it crystal clear that the Corps

1. 40 U.S.C. §§ 270a–270e.

2. Parging is a coat of mortar which is spread on concrete, in some instances,

for the purpose of sealing against moisture.

3. Parging.

of Engineers, the appellant and the appellee were aware of the conflict between the specifications and the drawings at the time the appellant and appellee were making their respective bids. They all agreed that a reasonable construction of the material submitted permitted a conclusion that parging of the basement walls on the buildings, the subject of this dispute, was not required. For that matter, it was not until after construction of the basement walls of those buildings was well under way that a representative of the Corps notified the appellant that parging was required. Evidently, there was a dispute between representatives of the Air Force and the Corps of Engineers as to whether parging was required. The Air Force prevailed. After the notice, appellant continued to take the same position and stood by that position throughout the administrative hearings and on the appeal to the Armed Services Board of Contract Appeals.

Mr. White, the president of the appellee, testified that just prior to the bid opening, he met with Mr. Muellner, the project manager for appellant, in the Westward Hotel in Anchorage. Appellee was invited to the suite which appellant had rented to discuss the masonry bid. At this meeting, the parging was *inquired into* by Muellner. White testified that he told Muellner and his associates that he did not figure the parging on the basement walls, other than the parging on the Colonels' quarters. Someone *during the course of this meeting* said that he had called the Corps of Engineers and that the latter learned that the contract did not call for parging all of the buildings or something to that effect. White related how he and Mr. Muellner opened the plans and the drawings and put them on the floor or the couch and then discussed the ambiguity. Appellee had prepared work sheets in connection with making his bid

and these work sheets did not include the cost of the parging on the buildings at Elmendorf, other than the Colonels' quarters. The parging on the latter was included in his figures on the bid. Appellee was not aware of any claim that he should do the parging on the other buildings until after Muellner received the notice from the Corps. Muellner does not dispute White's version of the hotel conversation, nor the fact that they examined the plans, drawings and specifications at that time. He says he does not recall the conversation. For that matter, his testimony in his deposition tended to fully corroborate White's version of the meeting and what occurred. At the trial, Muellner attempted to explain his deposition testimony, but the explanation was not accepted by the trial judge. We believe this hotel conversation and understanding prior to appellee's bid was in full conformity with Article IV of the subcontract.[4] Muellner's agreement in the hotel conversation, after an examination of the drawings, that parging was not required on the basement walls, other than the Colonels' quarters, certainly amounted to an explanation of the ambiguity between the language of the specifications and the data as shown on the drawings. Not only did Muellner take that position in the hotel conference, but appellant continued to hold to that position until after it had lost the case before the Armed Services Board of Contract Appeals. True enough, Muellner testified he told White that the specifications would govern over the drawings. This is denied by White. Muellner, at the trial, conceded that there was an ambiguity between the plans and the specifications, but contended that there was no way to resolve this ambiguity before making the bid. Be that as it may, the appellant accepted the appellee's bid well knowing that the appellee had not included in his bid the cost of the disputed

---

4. "Article IV. *Should it appear that the* work hereby intended to be done or the material to be furnished, * * * are not sufficiently detailed or explained on the *said drawings*, * * * second party shall apply to the first party for such other and further drawings or *explanations* as may be necessary * * *."

parging. The trial court made a finding in favor of the appellee on this issue and made a special finding that where the evidence was in dispute, he elected to accept and give greater weight to the testimony of the witness, White. Additionally, the trial court found that not until the masonry work was being completed did any one tell the appellant that parging was supposed to be included in the subcontract and until that time both the appellant and the appellee felt that parging was not required on the basement walls in question. That appellee did not include the disputed parging in his bid is clearly demonstrated by comparing the total amount of the bid, $244,370.00 with the amount of the appellant's counterclaim for the cost of the parging, $41,918.80. It is not likely that a subcontractor would take a chance on an item which represented approximately 17% of the face of his contract, unless he had an assurance that he was not responsible for the item. This inference supports the appellee's testimony that he was assured by Muellner that the parging of the basement walls, other than the Colonel's quarters, was not included in the subcontract.

## FINALITY OF CONTRACTING OFFICER'S DECISION

The prime contract provides that the decision of the government contracting officer is final. The subcontract between the parties provides that appellee shall be required to do all things and be bound by the rulings of the architect to the same degree as the appellant is bound. The term "architect" is defined to include any person authorized by the general contract to direct or pass upon the issue in question.

■ Relying upon United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951) and United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950), and others, the appel-

lant argues that the decision of the contracting officer and of the Contract Board of Appeals requiring appellant to parge all of the basement walls, including those in dispute, is final and that appellee is bound by that decision. We disagree.

First of all, Section 2 of the Wunderlich Act, 41 U.S.C. § 322,[5] prohibits a provision in a government contract which would make final the decision of an administrative official on a question of law. Recent cases, including one from our own circuit, have held that the interpretation of the contract is a question of law for the court, Crowder v. United States, 255 F.Supp. 873 (N.D. Cal.N.D.1964), aff'd 362 F.2d 1011 (9th Cir. 1966), and that the administrative decision regarding government contract disputes on questions of law is not final or conclusive. W. G. Cornell Co. of Washington, D. C., Inc. v. United States, 376 F.2d 299, 179 Ct.Cl. 651 (1967); George Hyman Construction Co. v. United States, 366 F.2d 1015, 177 Ct.Cl. 313 (1966). The rule applies to a decision by the Armed Services Board of Contract Appeals. Aircraft Associates & Manufacturing Co. v. United States, 357 F.2d 373, 174 Ct.Cl. 886 (1966); Crown Coat Front Co., Inc. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

Whether a contract is or is not ambiguous is a question of law for the court. Jones v. Chaney & James Construction Co., 399 F.2d 84 (5th Cir. 1968); Minnesota Amusement Co. v. Larkin, 299 F.2d 142 (8th Cir. 1962); Pekovich v. Coughlin, 258 F.2d 191, 17 Alaska 691 (9th Cir. 1958). We hold, as a matter of law, that the discrepancy between the specifications and the drawings in the prime contract created an ambiguity and that it was carried over into the negotiations leading up to, and in the execution of, the subcontract between appellant and appellee.

5. Enacted May 11, 1954, subsequent to the Moorman and Wunderlich decisions.

### PAROL EVIDENCE

 Citing a number of texts and International Brotherhood of Teamsters, etc. v. Morrison-Knudsen Co., Inc., 270 F.2d 530 (9th Cir. 1959), and others, appellant argues that the parol evidence rule prohibit the reception in evidence of the statements, agreements and discussions of the parties at and prior to the execution of the subcontract. While we recognize the rule, we hold it has no application where an ambiguity exists in connection with the requirements of the contract, its specifications and drawings. If a contract is obscure, or ambiguous in its terms, then its meaning is a question of fact and extrinsic evidence may be received in aid of its interpretation. Dale v. Preg, 204 F.2d 434, 14 Alaska 299 (9th Cir. 1953). Where a contract is ambiguous and where it has been interpreted by the parties themselves, then the contract should be enforced in accordance with such interpretation. Pekovich v. Coughlin, *supra*. *Pekovich* is closely in point. There, the court held that the writing was ambiguous and that the trial judge had to construe the meaning of the writing by recourse to the facts as developed in the evidence. There, as here, the parties agreed on the meaning of the instrument in question. The court went on to say that such being the case, the contract was enforceable as interpreted by the parties themselves. There, as here, the only dispute in the evidence was by the interested party. On this issue, the court called attention to the rule of law which requires that the weight to be given to the testimony of the witnesses must be decided by the trial judge since he had the opportunity to view the demeanor of the witnesses in the case. Here, it is obvious that the trial judge did not believe the witness Muellner, insofar as his testimony conflicted with that of White. In these circumstances, the trial judge did not commit error in permitting the witnesses to testify as to their discussions, understandings and agreements at and prior to the signing of the subcontract.

### ATTORNEY FEES

 Appellant complains of the allowance of attorney fees. The judgment in the lower court was entered against not only the appellant, but also its surety. United States, etc. v. Elwin, 219 F.Supp. 418 (D.Alaska 1961), resolves the issue against appellant. To the same effect see United States, etc. v. The Travelers Indemnity Co., 37 F.R.D. 322 (D.Or. 1965).

We conclude that the overall record is in full support of the judgment of the trial court[6] and that the judgment must be affirmed on the basis of the teachings expressed in Pekovich v. Coughlin, *supra*.

Affirmed.

---

6. Needless to say, we express no opinion on the controversy, if any, between the appellant and the United States.