The **FIRST NATIONAL BANK OF MIAMI, Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

No. 73-3052.

United States Court of Appeals, Fifth Circuit.

June 12, 1974.

Barry R. Davidson, Joseph P. Klock, Jr., Miami, Fla., for plaintiff-appellant.

Charles F. Mills, South Miami, Fla., for defendant-appellee.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

PER CURIAM:

On April 13, 1972, with an initial cash deposit of $200, Harriet Clifford opened a checking account with the First National Bank of Miami, plaintiff-appellee. On April 21, a deposit of $125,000 was made in the form of a check purportedly drawn by the Apple Canyon Company of Hanover, Illinois, on the Elizabeth State Bank of Elizabeth, Illinois. It appeared to be signed by one Diane Ward, an authorized signatory. The First National Bank of Miami forwarded the check for collection but subsequently received a wire that the check in question was being returned for insufficient funds. Due to the receipt of the wire a freeze was placed on the Clifford account on April 25. Approximately seven days later, evidently on instructions from Ms. Clifford, plaintiff re-deposited the check for collection.

In the interim, Ms. Clifford had, on April 14, drawn a check in the amount of $42,056.50 payable to W. F. Fitzimmons and Co., Inc., and Industrial Steel Construction, Inc. That check was presented for payment on May 1 and was honored that same day.

On May 4 First National Bank of Miami telephoned Elizabeth State Bank and was informed that the check would be "coming back". Six days later, Miami received the instrument with standard return form attached. This form had checked the "Insufficient Funds"

category and contained the printed *phrase* "Signature not like on file". Upon these developments plaintiff-appellant filed a Proof of Loss form with the defendant-appellee, claiming $41,858.50 in damages ($42,056.50, minus Ms. Clifford's balance of $198.00), plus attorneys' fees and other costs and expenses, less the $20,000 deductible of the Deductible Rider attached to the Bond. The claim was rejected, and this litigation followed.

After discovery was completed, cross motions for summary judgment were filed. The motion of the Insurance Company of North America was granted; the motion of the Bank was denied. We reverse, with directions.

The Bank's Blanket Bond contained the following provisions:

> Insuring Agreement D: (D) Loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries, or loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or forged endorsement or have been altered without the knowledge and consent of such customer or banking institution (telegraphic, cable or teletype instructions or advices, as aforesaid, sent by a person other than the said customer or banking institution purporting to send such instructions or advices shall be deemed to bear a forged signature), or (2) through the payment by the Insured of promissory notes which are payable at the Insured or which are or purport to be notes payable at the Insured under instructions of any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements. Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, shall be deemed to be forged as to such endorsement. Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

Exclusions Section 1. This bond does not cover:

(a) loss effected directly or indirectly by means of forgery or alteration of, or in any instrument, except when covered by Insuring Agreement (A), (D), (E), (F), or (G).

> \* \* \* \* \* \*

(d) loss resulting from the complete or partial non-payment of, or default upon,

> (1) any loan or transaction in the nature of, or amounting to, a loan made by or obtained from the insured, or

> (2) any note, account, agreement or other evidence of debt assigned or sold to, or discounted or otherwise acquired by, the insured.

whether procured in good faith or through trick, artifice, fraud or false pretenses unless such loss is covered under Insuring Agreement (A), (D), or (E); or loss resulting from payments made or withdrawals from any depositor's account by reason of uncollected items of deposit having been credited by the insured to such account, unless such payments are made to, or withdrawn by, such depositor or

representative of such depositor who is within the office of the insured at the time of such payment or withdrawal, or unless such loss is covered under Insuring Agreement (A).

After reviewing the evidence and receiving supporting memoranda, the District Judge held that, interpreted together or as a whole, there was no ambiguity in the Blanket Bond and that the sole proximate cause of the loss was due to plaintiff's extension of funds on an uncollected item of deposit. This, he felt, fell within Exclusion § 1(d) of the Bond.

Plaintiff's first assignment or error cites the general principle of insurance law requiring strict interpretation of such contracts and a resolution of ambiguous provisions in favor of the insured. Substantial support for plaintiff's position was accomplished by the introduction of an "Analysis of Changes", prepared by the Surety Association of America in conjunction with the revision of its Bankers Blanket Bond, Standard Form 24—the bond in question here.

In 1969, due to certain court decisions interpreting the then existing contract to include coverage for check "kiting", the Association added the following language to Exclusions Section 1(d):

. . . or loss resulting from payments made or withdrawals from any depositor's account by reason of uncollected items of deposit having been credited by the Insured to such account, unless such payments are made to, or withdrawn by such depositor or representative of such depositor who is within the office of the Insured at the time of such payment or withdrawal, or unless such loss is covered under Insuring Agreement (A).

According to the Analysis, the following was the reason for the change:

### LOAN EXCLUSION AND CHECK KITING EXCLUSION—

The Loan Exclusion Clause has been clarified by including reference to the following:

"(1) any loan or transaction in the nature of, or amounting to, a loan made by or obtained from the Insured, or

"(2) any note, account, agreement or other evidence of debt assigned or sold to, or discounted or otherwise acquired by, the Insured."

In addition, a Check Kiting Exclusion has been added reading as follows:

"loss resulting from payments made or withdrawals from any depositor's account by reason of uncollected items of deposit having been credited by the Insured to such account, unless such payments are made to, or withdrawn by, such depositor or representative of such depositor who is within the office of the Insured at the time of such payment or withdrawal, or unless such loss is covered under Insuring Agreement (A)."

The Bank's second assignment takes issue with the Court's finding of proximate cause of the loss. Steadfastly adhering to its position of no relation, the Bank contends it must absorb only losses occasioned by credit risks, the reason being that in true credit risk transactions plaintiff has the right of a holder in due course to initiate suit against the drawer of the dishonored bill, whereas, when losses are occasioned by forgery, the plaintiff has no right of action against the drawer.

The main thrust of the Insurance Company's argument is that the loss now before us was precipitated by the extension of funds on an uncollected item of deposit. It contends that whether the check was drawn on insufficient funds or in the commission of a forgery is irrelevant—by paying out the money the Bank assumed a credit risk and thus the Bond did not cover it. In other words, construing the contract of insurance as a whole, there is no ambiguity and its language supports the interpretation given it by the lower court.

This, of course, collides with the Bank argument that § 1(d) applies exclusively to credit transactions and does not exclude losses occasioned by forgery.

■ There is virtually unanimous acceptance of the proposition that the interpretation of a contract is a question of law, not fact, and, therefore, not restricted to review under the "clearly erroneous" rule. Kell v. Gross, 5 Cir., 1949, 171 F.2d 715; Frost v. Davis, 5 Cir., 1965, 346 F.2d 82; Republic Pictures Corp. v. Rogers, 9 Cir., 1954, 213 F.2d 662, cert. denied, 348 U.S. 858, 75 S.Ct. 83, 99 L.Ed. 676; Pekovich v. Coughlin, 9 Cir., 1958, 258 F.2d 191, 17 Alaska 691; Wooddale, Inc. v. Fidelity and Deposit Co. of Maryland, 8 Cir., 1967, 378 F.2d 627.

■■ What were the terms of the Bond?

### 1.

Insuring Agreement D extends coverage to losses resulting from the forgery of checks, etc.

### 2.

Exclusion § 1(a) excludes losses due to forgery not otherwise covered by Insuring Agreement D, etc.

### 3.

Exclusion § 1(d) excludes losses resulting from the extension of credit on an uncollected item of deposit.

The $125,000 check deposited on April 21 was a forgery. It, therefore, was clearly within the provisions of the Insuring Agreement D.

The $42,056.50 check in issue was written by Ms. Clifford on April 14. A freeze had been placed on her account on April 25, when it was learned that, at least for insufficient funds, the check was no good. Nevertheless, the Bank paid her $42,056.50 check on May 1.

This act would fall within Exclusion § 1(d) if it had been merely an extension of credit on an uncollected item of deposit, but Exclusion § 1(d) is silent as to forgeries, clearly included in Insuring Agreement D.

This, in our view, inescapably raises an ambiguity which eluded the notice of the District Court. It is an ambiguity which the Insurance Company could have easily avoided in the drafting of its contract of coverage.

This being a diversity case, on a Florida insurance contract, we look to the law of Florida, which seems to be quite clear:

> "Where the terms of an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnity. Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, L.R.A.1917D, 1091; National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212; Elliott v. Belt Automobile Association, 87 Fla. 545, 100 So. 797; Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013. A contract of insurance . . . will be construed liberally as against the insured and strictly as against the company. Martin v. Sun Insurance Office of London, 83 Fla. 325, 91 So. 363. Provisions of a policy limiting or avoiding liability are construed strictly against the insurer and liberally in favor of the insured. Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869."

Poole v. Travelers Insurance Co., 1938, 130 Fla. 806, 179 So. 138, 141–142.

Accordingly, there should have been summary judgment for the Bank.

The Judgment of the District Court is reversed, and remanded for the entry of judgment not inconsistent with this opinion.

Reversed and remanded.