Donald ACHESON et al.,
Plaintiffs-Appellants,

v.

FALSTAFF BREWING
CORPORATION,
Defendant-Appellee.

No. 73–2855.

United States Court of Appeals,
Ninth Circuit.

Aug. 25, 1975.
Rehearing and Rehearing En Banc
Denied Dec. 10, 1975.

Stanley Friedman (argued), San Francisco, Cal., for plaintiffs-appellants.

M. Laurence Popofsky (argued), San Francisco, Cal., for defendant-appellee.

## OPINION

Before MERRILL and KENNEDY, Circuit Judges, and ENRIGHT,* District Judge.

ANTHONY M. KENNEDY, Circuit Judge.

This action was brought to compel recognition of seniority rights asserted by previous employees in a brewery being reopened by the purchaser Falstaff Brewing Corporation. The district court entered judgment on the pleadings for Falstaff. We affirm for the reasons stated below.

The plaintiffs were brewery workers who found themselves without employment in January 1972 when Meister Brau, Inc., closed its Burgermeister plant in San Francisco and filed bankruptcy proceedings. In July 1972 Falstaff purchased the plant and equipment from the trustee in bankruptcy. Falstaff did not purchase the Burgermeister label or any other assets such as accounts receivable, customer lists, or good will. It did not expressly assume any of Burgermeister's liabilities or obligations. At the time of purchase, Falstaff announced that it would move its brewing operations from San Jose to the newly-acquired plant, and that it intended to continue employing workers from its San Jose plant in the new location.

Both Falstaff and Burgermeister were parties to the same collective bargaining agreement, which had been negotiated by the California Brewers Association, a statewide multi-employer bargaining agent, with the Teamsters Union joint board. Section 27 of the agreement provided that it would be binding upon successors and purchasers of the individual employers, and section 4 provided that seniority would be computed on the basis of length of service in a particular "establishment" of the employer. At the time of purchase, Falstaff consulted with officers of Brewers Local Union 893 and Bottlers Local 896, which represented employees in the Burgermeister plant. Brewers Local 893 also represented employees in Falstaff's San Jose plant. These union officials agreed with Falstaff that the collective bargaining agreement would not afford prior seniority rights to the former Burgermeister employees under the contemplated purchase and transfer of operations.

This action was brought in August 1972 under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for violation of the collective bargaining agreement. The plaintiffs claimed that their plant seniority rights at the Burgermeister plant entitled them to employment in the reopened plant in preference to Falstaff's San Jose employees. The action also included a claim against the unions for breach of their duty of fair representation. In March 1973 the district court denied a motion to dismiss the claim against the unions but granted the motion to dismiss the claim against Falstaff. Fed.R.Civ.P.

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

12(b)(6). After determining that plaintiffs would not amend their complaint, the district court in July 1973 granted final judgment for Falstaff on the basis of the pleadings. Fed.R.Civ.P. 12(c), 54(b). This appeal is thus concerned with whether the complaint against Falstaff was sufficient to state a claim upon which relief could be granted.

The parties make opposing contentions as to whether Falstaff is a "successor" to Burgermeister. However, it is rarely productive to ask whether a party falls within an abstract legal category without referring to the ultimate purpose for making this inquiry. Resolution of this appeal would not be advanced simply by determining whether Falstaff is a "successor." *See Howard Johnson, Inc. v. Detroit Local Executive Board,* 417 U.S. 249, 262–63 n.9, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

Indeed, the instant appeal is quite different from the normal successorship case in which a new employer may be required to bargain with a previously established union and possibly bound to some substantive provisions of a contract made by his predecessor. *See NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In such a case, explicit successorship provisions in the prior contract are not dispositive, and only a high degree of enterprise continuity will justify imposing obligations under a contract to which the new employer was not a party. *See Howard Johnson, supra,* 417 U.S. at 258 n.3, 261–64, 94 S.Ct. 2236. Here Falstaff not only is willing to bargain but also concedes that it is bound to its own employees by the same collective bargaining agreement under which the plaintiffs claim rights.

The question presented in this case is whether section 27 applies the collective bargaining agreement to Falstaff *as a successor to Burgermeister* rather than in its own right, and it is solely for this purpose of interpretation that we ask whether Falstaff is a successor. The plaintiffs contend that section 4 of the agreement required Burgermeister to give them seniority preference from the date of their employment within its establishment, and that Falstaff must do the same as a successor under section 27. Falstaff contends that section 27 does not apply in such a situation as its acquisition of the Burgermeister plant, and thus it is free to give priority to its San Jose employees. Thus the critical dispute is the applicability of section 27.

Section 27 provides in relevant part:

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers, transferees and assignees of the individual Employers. The Individual Employer shall give notice of the existence of this Agreement to any successor, purchaser, transferee, or assignee.

In interpreting the meaning of this paragraph pursuant to section 301 of the Labor Act, our decision is controlled ultimately by the requirements of sound national labor policy perceived and defined as a matter of federal law. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). However, state law may be considered if compatible with federal labor policies, *id.* at 457, 77 S.Ct. 912, and the parties drafted section 27 against a background of state law dealing with corporate successorship. The Supreme Court has indicated that the principles of state corporation law governing the rights of a purchasing company affect the parties' reasonable expectations of whether a successor's liability will be imposed under a collective bargaining agreement. *See Howard Johnson, supra,* 417 U.S. at 256–57, 94 S.Ct. 2236.

The pertinent state law can be summarized as follows:

Under the law of California and most other jurisdictions, where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor, except where: (1)

the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts. [Citations omitted.]

*Kloberdanz v. Joy Manufacturing Co.,* 288 F.Supp. 817, 820 (D.Colo.1968) (applying California law in diversity case). The above rule is applicable only where all or substantially all of a corporation's assets are purchased, and items such as receivables, trade name, and good will were not purchased here. Moreover, none of the noted exceptions would be applicable in the event Falstaff had purchased all of Burgermeister's assets: there was no express or implied assumption of liability; the transaction was not a consolidation or merger; and there is no allegation that the purchase was devised to escape liability for debts or any other obligations, including the obligation to hire former employees of the seller.

■ The purchasing corporation is in no sense a continuation of the selling corporation. Indeed, the unbroken chain of business continuity here is in Falstaff's operations, not Burgermeister's. Burgermeister shut down its plant and discontinued its San Francisco brewery as a viable business entity, and its affairs were placed in the hands of a trustee in bankruptcy. Falstaff, on the other hand, continued its own brewing business, and simply moved the site of some plant operations from San Jose to San Francisco. Under accepted principles of California law governing corporate transactions, Falstaff was not a successor to Burgermeister's obligation in this case.

■ In interpreting the collective bargaining agreement in light of national labor policy, the successorship cases— although not directly controlling—may indicate relevant policy considerations. Those cases have evinced a desire to avoid the delays in the bargaining process and the strife and inefficiencies that might follow if legitimate expectations of continued union representation were upset by ownership transfers or employer changes that did not materially change the composition of the bargaining unit. *See* Note, *The Bargaining Obligations of Successor Employers,* 88 Harv.L.Rev. 759 (1975). But the rationale of the successorship cases does not lead to a conclusion that Falstaff should be regarded a successor under section 27 of the collective bargaining agreement. Those cases protect the employees when a new employer refuses to recognize a duty to bargain with their representative. Here the plaintiffs seek to impose successorship duties in order to disrupt Falstaff's continuing relationship with its own employees. Absent any discrimination on account of union membership, and no such discrimination is alleged in this case, the successorship doctrine cannot be used to control the employer's decision to hire whom he chooses. The Supreme Court has emphasized that a new employer retains the prerogative of selective hiring. *Howard Johnson, supra,* 417 U.S. at 260–62, 94 S.Ct. 2236. Accordingly, we conclude that no national labor policy would be furthered by finding that Falstaff is obligated under section 27 as a successor to Burgermeister.

■ Finally, it is a fundamental rule of contract interpretation that great weight should be given the interpretation of the contract by parties thereto. *See, e. g., United States ex rel. White Masonry, Inc. v. F. D. Rich Co.,* 434 F.2d 855 (9th Cir. 1970). This rule has been applied to the interpretation of a collective bargaining agreement under section 301. *Oddie v. Ross Gear & Tool Co.,* 305 F.2d 143, 150–51 (6th Cir. 1962). In this regard the plaintiffs damaged their own case against Falstaff by alleging union officials had conceded that Falstaff was not a successor under the contract provision in question. However, we would find Falstaff not to be a successor under section 27 notwithstanding this allegation.

Inevitably in this case one group of employees would not be hired. Each group was an identifiable bargaining unit with rights under a collective bargaining agreement with its respective employer. The federal law of labor-management relations protects the bargaining process and its resulting contractual relationship, and nothing Falstaff has done undermines that policy. There is no other factor to indicate that the collective bargaining agreement required Falstaff to act in a different manner under the circumstances of this case.

Judgment affirmed.