# United States Court of Appeals
## For the First Circuit

No. 01-2058

ISRAEL SOTOMAYOR VARGAS, ET AL.,

Plaintiffs, Appellees,

v.

GEOLOGISTICS AMERICAS, INC., ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge

Ariadna Alvarez, with whom Francisco Chevere, McConnell Valdes, Rafael E. Aguilo-Velez, and Schuster, Usera, Aguilo & Santiago were on brief, for appellants.
Jorge Carazo-Quetglas, with whom Toledo Toledo & Carazo-Quetglas, P.S.C. was on brief, for appellees.

April 1, 2002

**COFFIN, <u>Senior Circuit Judge</u>.** Plaintiffs-appellees are former employees of Lep Profit International, Inc. ("Lep Profit"), which had been sold and became Geologistics Americas, Inc. ("Geologistics").  They brought suit in the Puerto Rico Court of First Instance charging that Geologistics, Caribbean Transportation Services, Inc. ("Caribbean"), Federal Express Corporation ("FedEx"), Teamsters Union of Puerto Rico, Local 901 ("Union"), and José Cádiz, an official of the union, had terminated their employment in violation of their collective bargaining agreement ("CBA") and had interfered with their contractual rights.  No law, federal or Puerto Rican, was cited in the complaint; the only reference was to "the applicable labor laws."  Defendants were successful in removing the case to federal district court, the court agreeing that the complaint in substance alleged violations of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Section 9 of the National Labor Relations Act, 29 U.S.C. § 159, the Railway Labor Act, 45 U.S.C. § 151, and Puerto Rican contract and tort law.

Defendants then moved to dismiss the complaint on statute of limitations grounds, arguing that the complaint, which charged the defendant companies with breaching the CBA and the union defendants with breaching their duty of fair

representation, constituted a hybrid Section 301/fair representation suit. Accordingly, the appropriate limitations period, under DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151 (1983), was six months. The CBA had a termination date of January 7, 1999. Any dismissals in violation of the CBA had to have occurred prior to that. And, since the complaint had not been filed until one and three quarters years later, on September 1, 2000, defendants argued that the suit was untimely.

Plaintiffs responded, not contesting that the complaint contained a time-barred hybrid claim, but instead urging that there were several unidentified state causes of action. They asked the court to retain supplemental jurisdiction or remand the case to the Puerto Rican court. Defendants opposed both requests, arguing that the facts alleged in the complaint described a matter completely preempted by federal law. The district court dismissed the federal claims as time-barred, declined to exercise supplemental jurisdiction over the state law claims, and remanded the case to the Puerto Rico Court of First Instance without reaching the issue of preemption. It subsequently denied without comment defendants' motion to reconsider. The defendants appealed.

The substantive issue before us on appeal is whether any state claims contained in the complaint survive the powerful

preemptive force behind Section 301 and the allied fair representation provisions of the National Labor Relations Act. As the Supreme Court has noted:

> [T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in absence of § 301.

Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983)).

In BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997), we noted that duty of fair representation "preemption operates in much the same fashion as section 301 preemption." And in Magerer v. John Sexton & Co., 912 F.2d 525, 531 (1st Cir. 1990), we applied the same test to state claims of tortious interference with contractual relations.

The Court has also laid down guidelines for determining when complete preemption is triggered. In Caterpillar, 482 U.S. at 394, it said, "Section 301 governs claims founded directly on rights created by collective bargaining agreements and also claims substantially dependent on analysis of a collective bargaining agreement." Moreover, it held that

> [o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. . . . The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA.

Id. at 393; see also Beidleman v. The Stroh Brewery Co., 182 F.3d 225, 237 (3d Cir. 1999).

If, then, the state claims are completely preempted by federal law and no cause of action survives for consideration by the Commonwealth court, remand to that court would be improper. See St. John v. Int'l Ass'n of Machinists and Aerospace Workers, 139 F.3d 1214, 1218 (8th Cir. 1998). The task before us is to review the arguments of plaintiffs-appellees in the light of the allegations of the complaint to see whether any state law claims are founded on the CBA or involve interpretation of the CBA.

Appellees advance four propositions. Each deals with a separate basis for avoidance of preemption. The first concerns a state claim of tortious interference with contractual relationships. This claim is leveled at Caribbean and FedEx. In their brief, appellees describe Caribbean and FedEx as third parties, not parties to the CBA, who carried out a deliberate strategy to terminate plaintiffs' employment so that, after such

termination, they could accomplish the sale of Lep Profit's assets to themselves.

Whatever might be the preemption survival potential of such a claim, it bears no resemblance to what appears in the complaint. In the complaint, there is no allegation that Caribbean and FedEx engaged in any action before they became, as successors to Lep Profit, parties to the CBA. On the contrary, paragraphs 40, 41, and 42 link together Geologistics, Caribbean, and FedEx as having acquired Lep Profit's assets and liabilities and as having assumed all of Lep Profit's contractual obligations. Furthermore, in paragraph 44 it is specifically alleged that all three successors violated the CBA at the time of the termination of plaintiffs' employment.

At oral argument, appellees' counsel, confronted with the allegations of the complaint, said that the complaint must be read liberally, that there may be other information in the background, and that there had been no discovery. But this is not a situation where only minor facts or inferences need be supplied. A "liberal" reading would in effect substitute entirely different allegations. As for the absence of discovery, we note that no Rule 56(f) request for additional time in which to conduct necessary discovery seems to have been made.

Appellees' second claim is directed at Geologistics, alleging the breach of an agreement wholly independent of the CBA: a letter to employees dated August 27, 1998. In paragraph 34 of the complaint, this letter is alleged to have announced a name change, from "Lep Profit International" to "Geologistics Americas, Inc.," and to have added that this was only a change in the name and that "the continuity of the acquired rights was guaranteed." How such a unilateral, gratuitous, unbargained-for message, confirmatory of and founded on CBA rights, can be considered an independent agreement sufficient to escape Section 301 preemption escapes us.

Appellees' third claim is directed at the union. Paragraphs 35 and 36 allege that on September 15, 1998, it entered into a "Closing Agreement" with Lep Profit, which "was meant to leave without effect" the CBA. It seems unarguable to us that such a claim would necessarily involve ascertaining what rights the CBA had contained in order to know how the Closing Agreement had compromised them or rendered them to no effect. Appellees' only rejoinder is to cite a Puerto Rico Supreme Court case, Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517 (1977). The issue there was whether Puerto Rico had an appropriate compensatory remedy in place to supplement the remedy expressly provided by the federal law. The Rivera court

-7-

merely assumed for argument's sake the permissibility of such a state law remedy, but it found no such remedy in place. It therefore made no decision as to whether federal preemption would apply in a proper case.

Finally, appellees claim that they are entitled to severance pay in accordance with Law 80 of May 30, 1976, 29 P.R. Laws Ann. § 185. This law mandates some compensation in the event of employment termination "without just cause." But a determination of just cause presupposes an analysis of the rights and duties imposed by the CBA. Moreover, even in the event that a termination found not to be in violation of the CBA could otherwise be adjudged without just cause under Law 80, the uncertainty caused by the application of two systems of law would undermine the policy of uniformity in labor law administration. See Beidleman, 182 F.3d at 231-32. We therefore hold that all claims in the complaint are preempted by federal labor law.

**The district court's order remanding the state law claims is vacated. The district court shall enter judgment for the defendants on all claims asserted in the complaint.**