### HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES LOCAL 2 Plaintiff,

v.

### VISTA INN MANAGEMENT CO., RPD Vagabond Associates A, LLC, Robert Schonfeld, Charles Schonfeld, Sydney Schonfeld, Schonfeld Family Trust, Heritage Marina Hotel LLC, and Does 1 Through 10, inclusive, Defendants.

### No. C 04–2388 MHP.

United States District Court, N.D. California.

Jan. 6, 2005.

---

**48.** Docket 37 at 2.

**49.** *See* Restatement (Second) of Contracts § 153 (1981).

Eleanor I. Morton, Peter W. Saltzman, Leonard Carder LLP, San Francisco, CA, for Plaintiff.

Scott I. Barer, Ballard, Rosenberg, Golper & Savitt, Universal City, CA, Anthony John Kerin, III, Menlo Park, CA, Bernard A. Burk, Jason Gerlach, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Nils Rosenquest, Rosenquest & Associates, San Francisco, CA, Robert Lawrence Wishner, Irvine, CA, Robert L. Rediger, Rediger, McHugh & Hubbert LLP, Sacramento, CA, for Defendants.

### *MEMORANDUM & ORDER*

PATEL, District Judge.

Plaintiff Hotel Employees and Restaurant Employees Local 2 ("Local 2"), a

labor union, has brought the present action for declaratory and injunctive relief to enforce a collective bargaining agreement signed on or about April 1, 2001. Plaintiff alleges that defendants Vista Inns Management Company, RPD Vagabond Associates A, LLC, Robert Schonfeld, Charles Schonfeld (now deceased), Sidney Schonfeld, the Schonfeld Family Trust,[1] Heritage Marina Hotel L.L.C., and Does 1 through 10 are signatories to, or otherwise legally bound by, the terms of the collective bargaining agreement, including a successorship addendum. Plaintiffs seek wages and benefits allegedly owed pursuant to the terms of the agreement.

*BACKGROUND* [2]

Local 2 is a labor union that represented the employees of Vagabond Inn until sometime in or around January, 2004. On or about April 1, 2001, Local 2 entered into a Collective Bargaining Agreement with the owners and managers of the Vagabond Inn. The agreement included an addendum entitled "Successorship Addendum to HERE Local 2 1999–2004 Collective Bargaining Agreement." Plaintiff's complaint alleges that the parties to the agreement included: Charles Schonfeld, Sidney Schonfeld, Robert Schonfeld, the Schonfeld Family Trust, Vista Inns Management Company ("Vista Inns"), and RPD Vagabond Associates A, LLC ("RPD").

The relevant history of the hotel's ownership and management is as follows. On December 12, 1991, Sidney Schonfeld recorded a quitclaim deed transferring his interest in the hotel property to the Schonfeld Family Trust. S. Schonfeld Req. for Jud. Not., Gerlach Dec., Exh. 1. On June 19, 1998, as the sole surviving trustee of this particular Schonfeld Family Trust, Sidney Schonfeld recorded a grant deed transferring his Trust's share in the property to his son, Robert Schonfeld. *Id.*, Exh. 2. On December 23, 2002, Sidney Schonfeld's original co-owner Charles Schonfeld transferred his interest in the property to the Marin County Exchange Corporation, a transaction which was recorded on July 24, 2003. *Id.*, Exh. 3. On April 29, 2003, the Marin County Exchange Corporation transferred Charles Schonfeld's former interest in the property to Robert Schonfeld, a transaction which was also recorded July 24, 2003. *Id.*, Exh. 4.

The complaint alleges, and a publicly recorded document submitted for judicial notice confirms, that on July 31, 2003, RPD recorded a cancellation of a lease and memorandum of a lease extension agreement of the hotel property signed by Sidney and Charles Schonfeld as landlords, and RPD as tenants. C. Schonfeld Req. for Jud. Not., Exh. C. *See also* Compl. at ¶¶ 10–11. The lease extension agreement had been recorded on July 22, 1998. *Id.* Vista Inns is a hotel management company that was under contract to operate the Vagabond Inn until the termination of the RPD lease in July, 2003. Plaintiffs allege that employees of the inn were employed by Vista Inns, RPD, Robert Schonfeld, Charles Schonfeld, Sidney Schonfeld, and the Schonfeld Family Trust as joint employers, alter egos, and/or a single employer.

Heritage Marina Hotel, LLC ("Heritage"), purchased the Vagabond Inn prop-

---

**1.** In its opposition, plaintiff acknowledges that there are two Schonfeld Family Trusts pertinent to the present action: one associated with Sidney Schonfeld and one associated with Charles Schonfeld, though only a single Schonfeld Family Trust is named in the complaint. By agreeing to dismiss Sidney Schon-

feld and his trust as parties to this action, plaintiff limits its allegations in the complaint to the Schonfeld Family Trust of which Charles Schonfeld was the trustee.

**2.** All facts herein have been taken from the plaintiff's Complaint, unless otherwise noted.

erty in or about late 2003. In or about January, 2004, Heritage assumed ownership and management of the hotel property. Local 2 did not receive notice of the ownership transfer. Heritage has replaced Local 2 employees with non-Local 2 represented employees.

Now before this court are four motions to dismiss filed by the following defendants in their separate capacities: Charles Schonfeld and his Schonfeld Family Trust, Sidney Schonfeld and his Schonfeld Family Trust, RPD and Vista Inns (jointly), and Heritage. All defendants have requested that this court take judicial notice of documents related to the dispute.

*LEGAL STANDARD*

A. *Rule 12(b)(6)*

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994).

*DISCUSSION*

I. *Judicial Notice*

In their separate motions, defendants have requested that this court take judicial notice of a quitclaim deed, grant deeds, a recorded cancellation of a lease, a sales agreement, a lease extension agreement, and a settlement agreement. Federal Rule of Evidence 201 provides in pertinent part: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. of Evi. 201(b). The rule instructs that where a party has properly requested such notice and supplied the court with the necessary information, a court "shall take judicial notice." Fed. R. of Evid. 201(d).

A. *Property Deeds & Recorded Leases*

Defendants Charles Schonfeld and the Schonfeld Family Trust of which he was trustee request judicial notice of three documents: (1) a grant deed transferring the property at 2550 Van Ness from Charles Schonfeld to Marin County Exchange Corporation, which was signed on December 23, 2002 and recorded on July 24, 2003, (2) a grant deed transferring the property at 2550 Van Ness from Marin County Exchange Corporation to Robert Schonfeld, which was signed on April 29, 2003 and recorded on July 24, 2003, and (3) a cancellation of lease and memorandum of lease between Charles and Sidney Schonfeld, landlords, and RPD, as tenant, of 2550 Van Ness, which was signed on July 31, 2003 and recorded on August 1, 2003. C. Schonfeld Req. for Jud. Not., Exh. A–C.

Defendants Sidney Schonfeld and the Schonfeld Family Trust of which he is trustee have provided deeds of transfer for judicial notice by this court, including (1) a November 12, 1991 quitclaim deed transferring the property from Sidney Schonfeld to his living trust (the Schonfeld Family Trust), and (2) a March 17, 1998 grant

deed transferring the property from the Schonfeld Family Trust, with Sidney Schonfeld as the sole surviving trustee, to Robert Schonfeld. In addition, they request notice of two deeds also brought before the court by Charles Schonfeld, namely the December 23, 2002 grant deed and the April 29, 2003 grant deed. *See* S. Schonfeld Req. for Jud. Not., Gerlach Dec., Exhs. 1–4.

A grant deed is an official record of easily verifiable accuracy. Unimpeached and certified copies of deeds have been widely held proper subjects of judicial notice. *See In Re American Continental Corp./Lincoln Savings and Loan Sec. Lit.,* 102 F.3d 1524, 1537 (9th Cir.1996), reversed on other grounds by *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (finding that courts may take judicial notice of matters of public record). *See also In the Matter of Manges,* 29 F.3d 1034, 1042 (5th Cir.1994) (taking judicial notice of deeds and assignments); *Western Federal Savings v. Heflin,* 797 F.Supp. 790, 792 (N.D.Cal.1992) (taking judicial notice of documents in a county public record, including deeds of trust); *Haye v. United States,* 461 F.Supp. 1168, 1174 (D.C.Cal.1978) (taking judicial notice of deeds and deeds of trust).

▆▆▆ Judicial notice is thus taken of the five documents requested by the Schonfeld defendants and their trusts. Each was publicly recorded with the San Francisco Assessor–Recorder's office, and each falls into the category of documents capable of "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. of Evi. 201(b). Taking judicial notice of these five documents does not transform the present motion into a motion for summary judgment.[3] Judicially noticed facts are one of two well-settled exceptions to the rule that courts may not consider submissions extrinsic to the complaint without properly converting the motion to a Rule 56 motion for summary judgment. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001). In admitting the documents, however, courts must remain diligently within the contours of facts properly taken on judicial notice, namely facts that are not "subject to reasonable dispute." *Id.* at 689 (citing Fed. R. of Evi. 201(b)).

### B. Purchase, Lease Extension, and Settlement Agreements

Defendant Heritage has requested that the court judicially notice its purchase agreement for the hotel property. *See* Heritage Mot., Pitamber Dec., Exh. B. The contract was not recorded and is not a matter of public record. In addition, RPD and Vista Inns have submitted a lease extension agreement and a settlement agreement for judicial notice. *See* RPD Mot., Hamill Dec. These documents are similarly not matters of public record. Both defendants ask this court to admit

---

**3.** Federal Rule of Civil Procedure 12(b)(6) provides that "if ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See also Grove v. Mead School Dist.,* 753 F.2d 1528, 1532–33 (9th Cir.1985), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985). The present motion is not a proper candidate for conversion of a motion under Rule 12(b)(6) to a motion under Rule 56, as plaintiff did not have the opportunity to discover or submit materials relating to such a disposition. *See Rand v. Rowland,* 154 F.3d 952, 958–59 (9th Cir.1998)(holding that conversion is proper where the parties have fair notice that the matter may be considered as a motion for summary judgment and have the opportunity to submit materials pertinent to such a disposition).

and interpret these various contracts as a basis for assessing their liability.

■ The general rule that a court may not consider extrinsic evidence outside the pleadings for the purposes of a motion to dismiss has two exceptions. As discussed, matters of public record may be the subject of judicial notice. *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001). A court may also consider documents whose authenticity cannot be questioned and on which plaintiff's complaint "necessarily relies." *Id.* Documents appropriate for inclusion through this latter exception must be integral to the plaintiff's complaint and dispositive in the dispute, raising the spectre that plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal. *See Parrino v. FHP,* 146 F.3d 699, 706 (9th Cir.1998). *See also Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993) (holding that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if it is dispositive of plaintiff's claims). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3rd Cir.1997) (admitting an annual report containing specific data to which allegations in the complaint referred). Notice to plaintiff has thus been held as a prerequisite to admission of such documents. *See Yak v. Bank Brussels Lambert, BBL Holdings Inc.,* 252 F.3d 127, 130–31 (2nd Cir.2001) (holding that a district court could consider a contract entered into by a plaintiff and defendant, where it met the three conditions of notice to plaintiff, authenticity, and centrality to the complaint).

■ The purchase agreement presented to this court by Heritage is a very close candidate for admission under the *Parrino* rule, but it is ultimately not an appropriate subject of judicial notice for several reasons. First of all, the document is not a matter of public record, and therefore its authenticity is subject to reasonable dispute by the parties. Indeed, RPD and Vista Inns raised evidentiary objections to the submission of the Heritage purchase agreement. RPD Obj. to Evi. Secondly, plaintiff was not a party to the contested agreement. *Cf. Yak,* 252 F.3d at 128 (plaintiff was a party to the admitted document); *Parrino,* 146 F.3d at 706 (admitting documents revealing the terms of plaintiff's own insurance coverage in a case concerning the scope of that coverage); *Lee,* 250 F.3d at 688–89 (upholding a district court's admission of the fact of a plaintiff's extradition hearing and a related waiver, but reversing admission of the disputed facts contained in the records of those proceedings). Indeed, Local 2 alleges that it was not given notice of the sale of the hotel, and therefore this court cannot assume that Local 2 saw the purchase agreement. Compl. ¶ 22, 32. While plaintiff's third claim alleges that Heritage expressly assumed the duties of the collective bargaining agreement, the complaint did not "necessarily rel[y]," nor is its allegation necessarily "predicated," on the purchase agreement submitted for this court's notice. *See Parrino,* 146 F.3d at 706. The complaint never identifies the document or bargaining stage at which that alleged assumption of the labor agreement took place, raising the possibility that the express written assumption of the collective bargaining agreement to which plaintiff's claims refer may not be the purchase agreement. Local 2 is entitled to present evidence of other prior or subsequent agreements between Heritage and the Schonfelds or RPD, and it would be

premature for this court to interpret the merger clause contained in the purchase agreement in the absence of evidence about the parties' bargaining history. *See Aragon–Haas v. Family Security Ins. Services, Inc.*, 231 Cal.App.3d 232, 282 Cal. Rptr. 233, 240 (2 Dist.1991) (holding that rational interpretation of contracts, including merger clauses, requires at least a "preliminary consideration of all credible evidence offered to prove the intention of the parties"). If plaintiff cannot produce evidence of an express assumption of the collective bargaining agreement, Heritage will certainly be vindicated at summary judgment. Under the present circumstances, however, admission of the purchase agreement would violate plaintiff's entitlement to notice of any documents offered against it prior to discovery, a principle that underlies the general rule that extrinsic evidence may not be considered on motions to dismiss. *See Parrino*, 146 F.3d at 706.[4]

The documents presented by RPD and Vista Inns are even less qualified for judicial notice. Local 2 never implicitly or explicitly references the lease extension agreement nor the settlement agreement in the complaint. While both documents offered by Vista Inns would certainly be relevant to this case, they are not integral to Local 2's complaint—indeed, this court has no basis to infer that plaintiff has ever seen these agreements or had reason to know of their existence. Plaintiff was not a party to either agreement and may have no basis by which to verify the authenticity of these documents. Admitting them would thus violate plaintiff's right to notice of documents brought before this court on a motion to dismiss. *See In re Burlington Coat*, 114 F.3d at 1426.

## II. Charles Schonfeld and his Schonfeld Family Trust's Liability under the CBA

Charles Schonfeld (now deceased) and the Schonfeld Family Trust of which he was a trustee have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that three documents properly submitted for judicial notice establish that, as a matter of law, Charles Schonfeld and his family trust were no longer bound by the collective bargaining agreement or its successorship addendum when any alleged violations of the agreement might have occurred. Specifically, these defendants advance three arguments for plaintiff's failure to state a claim of liability against them for an alleged breach of the labor agreement.

First of all, Charles Schonfeld and his trust argue that by transferring their partial ownership interest to a co-owner, Robert Schonfeld, who was also bound by the terms of the collective bargaining agreement, Charles Schonfeld did not violate the terms of the successorship addendum. C. Schonfeld Mot. at 5. Yet plaintiff correctly

---

**4.** All cases cited by Heritage involve circumstances where the plaintiff was a party or successor to the contested agreement or contract, thus ensuring that plaintiff had full knowledge of whether the document represented a complete and accurate picture of the parties' bargaining relationship. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196; *Swords to Plowshares v. Smith*, 294 F.Supp.2d 1067, 1069–70 (N.D.Cal.2002). Indeed, the rationale of the rule admitting documents central to the complaint is that plaintiff had notice of the document, and therefore should not seek to escape its admission on the motion to dismiss. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3rd Cir.1997). Heritage has also argued a Fifth Circuit rule that a court may disregard allegations that contradict facts established by judicially noticed documents, but it is clear that such a rule does not apply to facts established by documents not appropriately within the record of the complaint or taken for judicial notice. *See Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

disputes this characterization of the chain of title. Pl.'s Opp'n. at 8. The very grant deeds submitted for notice by this court state that Charles Schonfeld granted his property to the Marin County Exchange Corporation, not to Robert Schonfeld. C. Schonfeld Req. for Jud. Not., Exh. A. It was this intermediary owner that, over seven months later, transferred the property ownership to Robert Schonfeld. *See id.*, Exh. B. No evidence before this court illuminates the nature of Charles Schonfeld's agreement with the Exchange Corporation, nor whether the transfer to the corporation was conditioned on assumption of the collective bargaining agreement. The terms of the addendum provide for damages if an owner does not inform the union of a transfer, alert transferees of the labor agreement, the terms of the sale do not expressly require assumption of the collective bargaining agreement, and/or if the transferee does not assume the agreement. Compl., Successorship Addendum at ¶¶ B,C, D. However, defendants' argument on this issue, and plaintiff's line of reasoning in response, is ultimately academic. The current complaint alleges breaches of the collective bargaining agreement only in the transfer of the property to Heritage, not in the transfer of ownership to any other parties.

▌ Secondly, Charles Schonfeld and his trust argue that he was not bound by the collective bargaining agreement at the time of the termination of the lease to RPD. C. Schonfeld Mot. at 5. Taking the allegations in the complaint as true, Charles Schonfeld and the Schonfeld Family Trust failed to provide notice to Local 2 of the termination of the leasehold interest in the property. Compl. at ¶ 20; Req. for Jud. Not., Exhs. A, B. The successorship addendum required such notice to the union in writing "before any sale or transfer or any other change in name or ownership." Compl., Successorship Addendum at ¶ A. The addendum provides that "transfer" shall be broadly construed, encompassing any transaction which "results in the change in management of the hotel." *Id.* at ¶ F. To effectuate the intent of the successorship addendum, such "change" would include lease and management termination, an event which necessitates a change in management. As facts emerge, it may indeed become clear that Charles Schonfeld and his living trust had absolved themselves of any connection with the hotel before the cancellation of RPD's lease agreement. As it now stands, however, it was Charles Schonfeld himself who cancelled the lease with RPD in the document recorded on August 1, 2003. C. Schonfeld Req. for Jud. Not., Exh. C. Therefore, Local 2's allegation that he had a duty to notice the union of the termination of the management agreement has support in the record before the court. Compl. ¶¶ 18, 19, 20.

Charles Schonfeld characterizes the failure to give notice of an ownership or management transfer as a minor, "technical breach" of the collective bargaining agreement. C. Schonfeld Reply at 4. Yet defendants offer no basis, either legal or factual, for this court to assess whether such a breach was in fact minor, nor any basis to dismiss breaches of collective bargaining agreements based on their level of significance. As plaintiff has alleged that Charles Schonfeld was a party to the collective bargaining agreement with successorship provisions, and that he and other owners breached their obligations to give notice to the union of management and ownership changes, Local 2 has stated a claim for liability against Charles Schonfeld concerning his termination of management of the property. Compl. at ¶¶ 15, 17, 20.

▌ Finally, Charles Schonfeld argues that he cannot be held liable for any alleged violations of the collective bargaining

agreement arising out of the transfer of the property to Heritage, because he was no longer bound by the labor agreement or its successorship addendum at the point of sale to Heritage. C. Schonfeld Mot. at 6. Put simply, Charles Schonfeld argues that according to the complaint, the property sale to Heritage occurred in late 2003, after Schonfeld had transferred his ownership interests in the property (December 23, 2002) and terminated the RPD lease (August 1, 2003). Charles Schonfeld argues that he was therefore released from any claim to damages arising out of the sale to Heritage. This is correct. According to the facts alleged in the complaint and the documents noticed by this court, Charles Schonfeld was no longer an owner of the hotel property, nor a signatory to its management lease, when the sale to Heritage took place. The successorship addendum does not and could not bind owners and managers in perpetuity, but rather governs only those acts which occur during the time of their legal relationship to the property.

As discussed above, factual questions remain as to whether Charles Schonfeld complied with the collective bargaining agreement in his withdrawal from ownership of the hotel property. However following this withdrawal, he ceased to be liable for violations of the agreement. Therefore, this defendant and his family trust's motion to dismiss is denied for claims relating to Charles Schonfeld's termination of the lease agreement with RPD. The motion is granted for claims relating to liability under the collective bargaining agreement for the sale of the property and its management to Heritage.

### III. Sidney Schonfeld and his Schonfeld Family Trust's Liability under the CBA

Defendant Sidney Schonfeld and the Schonfeld Family Trust associated with his estate have moved to dismiss plaintiff's first and second causes of action naming them as defendants. They argue that they were never parties to the collective bargaining agreement, because they divested their interest in the hotel property in 1998, three years before the collective bargaining agreement and successorship addendum were allegedly signed.

Informed by the deeds offered for this court's judicial notice, plaintiff has agreed to dismiss without prejudice the claims against Sidney Schonfeld and his Schonfeld Family Trust. Plaintiff asks the court to preserve the right to join Sidney Schonfeld and his trust again as defendants, should discovery reveal that their interests continued through April 1, 2001. Defendants Sidney Schonfeld and his trust have conceded that plaintiff may specify dismissal without prejudice on a voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1).

Plaintiff's claims against Sidney Schonfeld and the Schonfeld Family Trust associated with his estate are thus dismissed without prejudice.

### IV. Heritage Marina Hotel LLC's Liability under the CBA

Heritage, the new owner of the hotel, has moved to dismiss plaintiff's action against it on three grounds: (1) that the collective bargaining agreement is not binding on Heritage, even where the agreement contains a successorship clause, (2) Local 2's third claim is preempted by Section 301 of the Labor Management Relations Act, and (3) the purchase agreement for the Vagabond Inn does not contain an express assumption of the collective bargaining agreement and did not make Local 2 an intended third-party beneficiary of the purchase agreement.

### A. The Collective Bargaining Agreement's Binding Effect

■ Heritage first contends that the collective bargaining agreement in effect between the Schonfeld defendants and Local 2 is not binding on Heritage, despite the inclusion of successorship provisions in the agreement. It correctly argues that the general rule under federal law provides that a successor employer is not bound to adopt a collective bargaining agreement governing the predecessor employer. *See New England Mechanical, Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1342 (9th Cir.1990). However, courts have formulated two exceptions to this rule which are relevant here. First, employers found to be "successors" of the predecessor business may be required to bargain with the predecessor business's union, if the new business has hired a majority of its employees from the workforce of the predecessor business. *See Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 41, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) (holding that if a new employer is in fact a legally-defined "successor" of the old employer, and if a majority of its employees were employed by its predecessor, the new employer has an obligation to bargain with the union). Secondly, notwithstanding the exception above, an employer is not obligated to bargain with a predecessor's union unless it entered into an agreement to assume the collective bargaining agreement's obligations, even where the labor agreement governing the predecessor business contained a successorship provision. *See Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO*, 417 U.S. 249, 264–65, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974) (holding that the inclusion of successorship clauses in bargaining agreements cannot bind a subsequent buyer to the substantive terms of the agreements where it was

clear that the new employer refused to assume any obligations under the agreements). Defendant therefore correctly argues that absent a showing that Heritage assumed the obligations of the collective bargaining agreement, or that a majority of the new hotel's workforce were Local 2 employees and that the business was a "successor" as defined by law, Heritage was not bound as a successor employer to bargain with Local 2 or to assume the collective bargaining agreement. Plaintiff did not allege that Heritage was a "successor" hotel, nor that it employed a majority of employees formerly represented by Local 2. Therefore, plaintiff has invoked only the latter exception for express assumption of the labor agreement.

■ Plaintiff alleges that transfer of the hotel was conditioned on the assumption of the collective bargaining agreement without modification and that Heritage expressly assumed the obligations of the collective bargaining agreement. Compl. at ¶¶ 21–3. For the purposes of a motion to dismiss, this court must accept a plaintiff's allegations as true. *Cahill*, 80 F.3d at 337–38. The terms of Heritage's agreement to purchase the hotel property are pure questions of fact, on which no evidence is properly before this court. Heritage has requested that this court take judicial notice of its contract with the Schonfelds, however (as discussed earlier in this order) it would be improper for this court to judicially notice the content of a contract between the parties where the document was not necessarily the basis of plaintiff's allegations and plaintiff may not have had notice of the agreement. *See Parrino*, 146 F.3d at 706. Without providing plaintiff with an opportunity to present counter evidence and converting this motion to a motion for summary judgment, it would be improper for this court to interpret the hotel property purchase contract—an analysis that may involve consid-

eration of myriad factual aspects of the parties' bargaining relationship. Plaintiff's allegations that the Schonfelds made acceptance of the bargaining agreement a condition of purchasing the property and that Heritage did in fact assume the agreement in writing are sufficient to state a claim upon which relief can be granted. Compl. ¶¶ 23, 35.

### B. Federal Preemption of Plaintiff's Third Claim

Secondly, Heritage argues that the plaintiff's claim under California Civil Code section 1559 is preempted by section 301 of the Labor Management Relations Act.[5] 29 U.S.C. § 185.[6] Plaintiff's section 1559 claim asserts a breach of contract, with Local 2 as a third-party beneficiary to an express agreement between Heritage and the Schonfelds, Vagabond, and Vista Inns that the new hotel would assume the collective bargaining agreement. Compl. ¶¶ 34–38. The issue is thus whether plaintiff was required to bring this claim under section 301.

 "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (also formulating the standard as whether "evaluation of the [state law] claim is inextricably intertwined with consideration of the terms of the labor contract") (internal citations omitted). The Court has distinguished state law claims that are "inextri-

cably intertwined" with the terms of a collective bargaining agreement from "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement." *Id.*

 The linchpin of preemption analysis is whether the terms of a collective bargaining agreement must be interpreted in order to evaluate a plaintiff's state law claim. *See Cramer v. Consolidated Freightways*, 255 F.3d 683, 691–92 (9th Cir.2001) (holding that state law claims are preempted where "adjudication of the claim must require interpretation of a provision of the CBA"). Preemption doctrine has been strongly applied where state law claims were brought by employees governed by a collective bargaining agreement with terms relevant to the state law right asserted, and less strongly where the facts necessary to prove the claim derive from outside a governing collective bargaining agreement. *Compare Int'l Bro. of Elec. Workers v. Hechler*, 481 U.S. 851, 862, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (holding that a state tort law claim against a union for failing to properly train employees and guard against unsafe working conditions was preempted because the union's collective bargaining agreement with plaintiff's employer governed whether the union assumed the duty of care which it allegedly breached) *with Ramirez v. Fox Television Inc.*, 998 F.2d 743, 748 (9th Cir.1993) (holding that state law discrimination claims were not preempted, even where reference to a collective bargaining agreement would be necessary, because the claim would not require interpretation of that agreement). The Ninth Circuit has formulated the clear standard that "the need to interpret the

---

**5.** Section 301 provides that: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties".... 29 U.S.C. § 185(a).

**6.** Plaintiff has pled two causes of action arising under section 301, however these causes of action have not been brought against Heritage. Compl. ¶¶ 29–33.

[collective bargaining agreement] must inhere in the nature of the plaintiff's claim" in order that preemption apply, or, to put it differently, a claim must be interpreted with reference to rights and duties established by the labor agreement. *Cramer,* 255 F.3d at 691–92. Interpretation of the labor agreement, as opposed to merely referencing or considering the document, is the key requirement of preemption. *Ramirez,* 998 F.2d at 748.

Local 2's action presents an unusual issue not directly addressed by existing case law. Plaintiff's claim against Heritage does not allege a violation of the terms of a collective bargaining agreement. Instead, it alleges that Heritage entered into a separate contract with the Schonfelds, Vagabond, and Vista Inns concerning assumption of the collective bargaining agreement, then subsequently breached that contract by failing to assume the collective bargaining agreement. Compl. ¶¶ 35–7. Analysis of this claim requires this court to investigate whether Heritage's bargain for the hotel purchase included an assumption of the collective bargaining agreement "without modification" and "in writing." The claim also touches the collective bargaining agreement in the sense of giving meaning to the allegation that Heritage "fail[ed] to assume" the collective bargaining agreement—an analysis that could be as extrinsic to the terms of the collective bargaining agreement as whether Heritage ever bargained with Local 2 or hired its members. *See* Compl. ¶¶ 24, 37. In addition, the claim requires an inquiry into the wage rate due under the collective bargaining agreement as a basis for damages.

The key document for interpreting plaintiff's claim is not the labor agreement, but rather the alleged contract among the Schonfelds, Vagabond, and Vista Inns and Heritage. The only violation alleged in the claim is violation of that contract, not a violation of the terms of the collective bargaining agreement and/or its successorship addendum. The fact that this contract allegedly concerned the extension of the collective bargaining agreement is not "inextricably intertwined" with the terms of the labor agreement, because it would not necessarily require interpretation of any specific terms in the agreement. *See Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. 1904. *See also Firestone v. Southern California Gas Co.,* 219 F.3d 1063, 1065 (holding that "[w]hen the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption"). The contract entered into by Heritage and the Schonfelds, Vagabond, and Vista Inns was a distinct agreement to which Local 2 was not a party, and the collective bargaining agreement is relevant only insofar as it was a predicate for any express assumption of it by Heritage.

Defendant is correct that some courts in other circuits have held that section 301 preempts a state law claim where resolution of the claim will not require interpretation of a specific provision of the collective bargaining agreement, but will nevertheless require the court to evaluate rights created by a collective bargaining agreement. *See Jones v. General Motors Corp.,* 939 F.2d 380, 382–383 (6th Cir. 1991) (holding that section 301 preempted state law on interpreting a settlement agreement that "was arrived at by virtue of a grievance process established by a collective bargaining agreement, signed only by the parties engaged in collective bargaining, and promised reinstatement to a job whose terms and conditions are created by and subject to a collective bargaining agreement"); *Vargas v. Geologistics Ams.,* 284 F.3d 232, 235 (1st Cir.2002) (holding that a "unilateral, gratuitous, unbargained-for message, confirmatory of and founded on CBA rights" was not an

independent agreement that would escape section 301 preemption). These cases are distinct from the present action, however, as they concerned claims arising *between the parties* to a collective bargaining agreement and hinging on interpretation of the specific terms of the collective bargaining agreement for resolution.

 This court finds that plaintiff's claim is not preempted by section 301. This holding is supported by the policy rationales for section 301 preemption. The rule that the terms of a collective bargaining agreement should be interpreted in federal court under federal law is animated by a strong policy concern that collective bargaining agreements should be interpreted uniformly across the country, thus ensuring stability in both negotiations and administration. *See Hechler,* 481 U.S. at 857, 107 S.Ct. 2161 (describing that federal law serves "interests in interpretive uniformity and predictability" in labor-contract disputes). *See also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (reasoning that "[t]he possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements").

 The contract that is at issue in this case, however, is an alleged contract among the employers, hotel owners, and lessors, not the collective bargaining agreement. There is nothing about that dispute as now framed which requires interpreting the collective bargaining agreement's terms. The mere fact that the collective bargaining agreement will serve as a basis for assessing damages under the state law claim does not change this preemption analysis. The Supreme Court has established that interpreting provisions of a collective bargaining agreement such as the rate of pay and other benefits for the purposes of calculating a damages award is an insufficient basis for preemption of state law. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

Therefore, unless plaintiff amends its complaint so as to change this analysis, or the emergence of evidence demonstrates that the alleged contract entered into by Heritage and the Schonfelds, Vagabond, and Vista Inns makes reference to select provisions of the collective bargaining agreement or otherwise requires an interpretation of that agreement, the plaintiff's third claim is not preempted by section 301. Even if plaintiff's claim is determined to be preempted by section 301 at a later stage in the development of this case's record, plaintiff is correct that it would not result in dismissal. Plaintiff would be permitted to amend the complaint to state a claim under section 301 against Heritage, because the test for granting a motion to dismiss is whether the facts support any valid claim entitling plaintiff to relief, even where plaintiff erroneously named the wrong legal theory. *See Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985).

### C. The Effect of Heritage's Purchase Agreement

Defendant argues that the purchase agreement for the sale of the hotel property between Heritage and the Schonfelds does not support Local 2's claim that Heritage expressly agreed to assume the collective bargaining agreement or that Local 2 was an intended third-party beneficiary of the agreement. As discussed, Heritage has asked this court to take judicial notice of a purchase agreement related to the sale of the hotel property, an invitation which the court has refused.[7] Without

---

7. In support of its arguments, defendant has also submitted a declaration by Ramesh Pi-

consideration of the purchase agreement and other evidentiary submissions concerning the contracting parties' intent, this court has no basis on which to evaluate whether plaintiff was an intended third-party beneficiary. Such an inquiry depends ultimately on questions of fact that are inappropriate on the present motion to dismiss. *See Hayes Children Leasing Co. v. NCR Corp.*, 37 Cal.App.4th 775, 43 Cal. Rptr.2d 650, 660 (1 Dist.1995) (holding that the question of third-party beneficiaries to a contract involves questions of fact and thus cannot be raised for the first time on appeal).

Plaintiff has therefore stated a claim for breach of contract, enforced by a third-party beneficiary, against Heritage.

## V. Liability of RPD Vagabond Associates A, LLC and Vista Inns Management

Defendants RPD and Vista Inns jointly argue for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that plaintiff failed to allege that either defendant breached an express term of the successorship addendum. They argue that even if the court finds that plaintiff sufficiently alleged a breach of the addendum, plaintiff has alleged that RPD and Vista Inns were acting as agents of one or more of the Schonfeld defendants and therefore

cannot be liable for plaintiff's alleged damages.

■■■ As a preliminary matter, this court reminds these defendants that the present action is proceeding in federal court under federal question jurisdiction, and both claims against Vista Inns and RPD are brought under federal law. *See* 28 U.S.C. § 185; 28 U.S.C. § 1367(a). Interpretation of collective bargaining agreements is governed by the Labor Management Relations Act. *See Cramer*, 255 F.3d at 689 (describing that section 301 is a jurisdictional statute that has come to authorize a body of federal common law concerning the interpretation of collective bargaining agreements). The rules governing interpretation of collective bargaining agreements are "controlled ultimately by the requirements of sound national labor policy, perceived and defined as a matter of state law." *Acheson v. Falstaff Brewing Corp.*, 523 F.2d 1327, 1329 (9th Cir. 1975). However, state law may be considered where it is compatible with federal labor policies. *Id.*

### A. Allegation of a Breach of the Successorship Addendum

Plaintiff made the following allegations with respect to Vista Inns and RPD in its complaint, all of which must be taken as true for the purposes of the present mo-

---

tamber, its negotiator in the hotel property purchase, regarding the scope of bargaining involved in the hotel purchase. Consideration of that declaration would be utterly inappropriate for the purposes of the present motion to dismiss, and defendant has not offered a rationale for its submission. Federal Rule of Civil Procedure 12(b)(6) provides that "if ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See Grove v. Mead School Dist.*, 753 F.2d 1528, 1532–33 (9th Cir.1985), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88

L.Ed.2d 70 (1985). As discussed earlier in this order, conversion to a motion for summary judgment would be inappropriate in the present action, where the nonmoving party had no notice of the conversion and did not themselves submit any evidence outside of the pleadings. *Grove*, 753 F.2d at 1532 (holding that "[b]efore summary judgment may be entered, all parties must be given notice of the motion and an opportunity to respond. The opportunity to respond must include time for discovery necessary to develop facts justifying opposition to the motion.") (internal citations omitted). Heritage's declaration is thus excluded from consideration.

tion. Plaintiff alleges that Vista Inns managed the Vagabond Inn under contract with the Schonfelds and with RPD; that RPD was the lessee of the inn until July 31, 2003; and that the Schonfelds, RPD, and Vista Inn operated the inn as "joint employers, alter egos, and/or single employer." Compl. at ¶¶ 5, 10, 11. They further allege that defendant Heritage purchased the Vagabond Inn in late 2003. *Id.* at ¶ 13. Plaintiff's claims against RPD and Vista Inns include failure to notify the union of the termination of the lease agreement, failure to notify the union of the transfer to Heritage, and liability for damages stemming from Heritage's failure to adopt the collective bargaining agreement. Compl. at ¶¶ 20, 22, 27, 28, 31, 32.

Defendants dispute plaintiff's allegation that the lease agreement between Charles Schonfeld and the RPD and Vista Inns actually ended as late as July 31, 2003, as plaintiff alleges. Compl. at ¶¶ 5, 10, 11. However, this court has taken judicial notice of the lease agreement recorded with the San Francisco Assessor–Recorder, which states only one date: July 31, 2003. C. Schonfeld Req. for Judicial Notice, Exh. C. No evidence to the contrary is properly before this court, and in point of fact, the dispute as to the exact dates of the end of RPD's occupancy of the property makes no difference to the present disposition of their motion.

Defendants argue that the complaint fails to state a claim for a violation of the collective bargaining agreement and successorship addendum. The addendum states that upon a transfer of the management agreement, the management company is required to give notice of the transfer to the union, give notice of the collective bargaining agreement to the transferee, and condition the transfer on assumption of the labor agreement. Compl., Successorship Addendum, ¶¶ A, B, C(2). Therefore, the issue of whether plaintiff has

stated a claim against RPD and Vista Inns is similar to the analysis applied to the claims against Charles Schonfeld. It turns on three questions: (1) whether RPD and Vista Inns had a duty under the labor agreement to notify Local 2 of the termination of the lease agreement with Charles Schonfeld, (2) whether RPD and Vista Inns had a similar duty to notify Local 2 as to the sale of the hotel and the assumption of new hotel management by Heritage, and (3) whether RPD and Vista Inns are liable for Heritage's failure to assume the collective bargaining agreement. Claims against defendants stemming from the second and third events are dismissed.

■■■ RPD and Vista Inns had a duty under the labor agreement to notify Local 2 of the termination of the lease agreement with Charles Schonfeld. *See* Compl. at ¶ 18–20; C. Schonfeld Req. for Jud. Not., Exh. C. The successorship addendum required notice to the union in writing "before any sale or transfer or any other change in name or ownership." Compl., Successorship Addendum at ¶ A. The addendum provided that the term "sale and/or transfer as used in this successorship agreement applies to any changes or a transfer of a management agreement or lease." *Id.* at ¶ F. RPD and Vista Inns argue that termination of the management agreement and lease are not the same as a transfer. However, the express intent of the addendum is "to protect the employment opportunities and monetary terms and conditions of bargaining unit members." Discerning the intent of parties is a primary rule in the interpretation of collective bargaining agreements. *See Anderson v. AT & T Corp.*, 147 F.3d 467, 475 (6th Cir.1998) (holding that breach-of-contract cases under the Labor Management Relations Act are governed by many of the basic principles of contractual interpretation, including the principle that the

court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent) (internal quotations omitted). In addition, it is virtually a foregone conclusion that the termination of one management agreement or lease will result in the assumption of new management, thus effectuating a "change" of management. Therefore, plaintiff has sufficiently alleged a violation of the successorship addendum for failure to give notice that it was departing as management of the hotel.

However, RPD and Vista Inns cannot be held liable for breaches of the collective bargaining agreement which occurred after their legal relationship with the hotel ceased. RPD and Vista Inns' management of the hotel ceased prior to Heritage's purchase of the hotel and assumption of its management. The publicly recorded lease agreement judicially noticed in this action sets the date of that cancellation as July 31, 2003, before the late 2003 date in which Heritage allegedly purchased the hotel. Compl. ¶ 13; C. Schonfeld Req. for Jud. Not., Exh. C. RPD and Vista Inns were thus not parties to the sale of the hotel or the assumption of new management, and they were no longer signatories to any management relations on the property. As stated in this order, the successorship addendum does not and could not bind owners and managers in perpetuity, but rather governs only those acts which occur during the time of their legal relationship to the property.

### B. RPD and Vista Inns' Agency Relationship with the Schonfelds

RPD and Vista Inns also seek dismissal on the basis that even if the court finds that plaintiff sufficiently alleged a breach of the addendum, plaintiff has alleged that RPD and Vista Inns were acting as agents of one or more of the Schonfeld defendants. RPD Mot. at 10–12. Defendants argue that as agents of the Schonfelds,

they cannot be liable for plaintiff's alleged damages. *Id.* This argument raises numerous factual questions for which there is no evidence currently in the record; for instance, it raises questions regarding the nature of RPD's lease with the Schonfelds, the Schonfelds' level of involvement in negotiating and adopting the collective bargaining agreement, and which entity acted as employer of Local 2 members at the hotel. For the purposes of the present motion, Local 2's allegation that RPD and Vista Inns, along with the Schonfeld defendants, executed the collective bargaining agreement and the successorship addendum is sufficient to state a claim of liability under the agreement. Compl. ¶¶ 15–16. Until evidence of that transaction is in the record, the parties' actual liability for the collective bargaining agreement cannot be determined.

Therefore, RPD and Vista Inns' motion to dismiss is denied insofar as it concerns the notice due to Local 2 upon defendants' termination of the lease agreement with Charles Schonfeld. The motion to dismiss plaintiff's claims against RPD and Vista Inns is granted on the issue of liability under the collective bargaining agreement for the sale of the property and the transfer of its management to Heritage.

### CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that:

1) Charles Schonfeld and his associated Schonfeld Family Trust's motion to dismiss is DENIED for claims relating to Charles Schonfeld's termination of the lease with RPD. The motion is GRANTED for claims relating to liability for the sale of the property and its management to Heritage Marina Hotel, LLC.

2) Sidney Schonfeld and his associated Schonfeld Family Trust's motion to

dismiss is GRANTED without prejudice.

3) Heritage Marina Hotel, LLC's motion to dismiss is DENIED.

4) Vista Inns Management and RPD Vagabond Associates A, LLC's motion to dismiss is DENIED on the issue of notice due to Local 2 upon termination of the lease agreement with Charles Schonfeld. Vista Inns Management and RPD Vagabond Associates A, LLC's motion to dismiss is GRANTED on the issue of liability under the collective bargaining agreement for the sale of the property and its management to Heritage.

IT IS SO ORDERED.